IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                            Case No. 16-cv-715 PJK/GBW

VERNON LEE BAKER,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255.  *Doc. 1.*[1]  Defendant seeks to have his

conviction and sentence set aside pursuant to the Supreme Court's decision in *Johnson v.*

*United States*, which struck down the residual clause of the Armed Career Criminal Act

(ACCA) as unconstitutionally vague under the Fifth Amendment Due Process Clause.

135 S.Ct. 2551 (2015).  *See generally doc 1.*  Having reviewed the pleadings and record

before the Court, I recommend denying the Motion.

I.     BACKGROUND

Defendant was convicted by a jury of being a felon in possession of a firearm and

ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) on April 21, 2011.  *Cr.*

*docs. 30, 116.*  Ordinarily, this crime carries a maximum term of imprisonment of ten

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-715-PJK-GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 08-CR-1680-PJK.  For filings made on both dockets, only the civil docket number is given.

years.  However, the ACCA provides that a defendant convicted of being a felon in

possession of a firearm faces an enhanced sentence where he has three or more previous

convictions for a "violent felony."  *Id.* at § 924(e)(2)(B).  Specifically, defendants with

three prior convictions which satisfy the ACCA are subject to a maximum sentence of

life imprisonment and a minimum of fifteen years imprisonment.  *See Logan v. United*

*States*, 552 U.S. 23, 27 (2007).  At the time of Defendant's sentencing, the ACCA defined

"violent felony" as any crime punishable by imprisonment for a term exceeding one

year that:

> (i)   has as an element the use, attempted use, or threatened use
>        of physical force against the person of another; or
> (ii)  is burglary, arson, or extortion, involves use of explosives, *or*
>        *otherwise involves conduct that presents a serious potential risk of*
>        *physical injury to another[.]*

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The italicized portion is known as "the

residual clause" of the ACCA, which the Supreme Court struck down as

unconstitutional under the void-for-vagueness doctrine in its *Johnson* decision.  *See* 135

S. Ct. at 2557-61.[2]

    After modifications to the presentence report (PSR) based upon Defendant's

objections,[3] the Court concluded that Defendant had at least three prior "violent felony"

---

[2] The Supreme Court has instructed that its *Johnson* decision is retroactively applicable to cases on collateral review.  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  Because Defendant filed his § 2255 petition within one year of the Supreme Court's decision in *Johnson*, it is properly before the Court to decide whether *Johnson* applies to—and justifies vacating—Defendant's sentence, which was enhanced under the ACCA.  *See Dodd v. United States*, 545 U.S. 353, 357 (2005).

[3] *See cr. docs. 126, 127, 130.*

2

convictions.  *See cr. docs. 127, 130*; *see also* PSR ¶¶ 28, 87.  Consequently, he qualified for the increased statutory punishment under the ACCA and the sentencing guideline enhancement under U.S.S.G. § 4B1.4(b).  With a minimum required sentence of 180 months and a guideline range of 235-293 months, Defendant was sentenced to 235 months of imprisonment and three years of supervised release.  *Cr. doc. 130*.

Defendant's past convictions that were classified in the PSR as "violent felonies" justifying his designation as an armed career criminal include: (1) Robbery While Armed with a Deadly Weapon (1st Judicial District Court, Santa Fe, New Mexico, case number CR-1977-00179); (2) Armed Robbery with a firearm enhancement (2nd Judicial District Court, Albuquerque, New Mexico, case number D-202-CR-7932613); and (3) Aggravated Battery, Deadly Weapon (2nd Judicial District Court, Albuquerque, New Mexico, case number D-202-CR-00004168).[4]  PSR ¶ 28.  The PSR also reflects a conviction for Aggravated Assault Against a Household Member (Deadly Weapon), which contributed three criminal history points under U.S.S.G. §4A1.1(a).  PSR ¶ 39.  At the time of sentencing, Defendant did not dispute any of the PSR findings.  *Cr. doc. 130*.

---

[4] Defendant was convicted of this offense under Count 3 of the indictment in the matter.  Defendant was also convicted of Count 5, Bribery of a Witness (Threats or Bribes- Reporting; Felony) in the same matter, and the PSR lists both convictions as predicate offenses justifying the ACCA enhancement.  PSR ¶ 28. Defendant argues that the bribery offense does not qualify as a "violent felony" under the ACCA.  *Doc. 1* at 13-16.  The United States does not dispute that assertion and instead argues that the other three felonies enumerated in the PSR as the basis for the ACCA enhancement are rightly considered "violent felonies." *Doc. 7* at 2 n.2.  I therefore recommend that the Court decline to consider whether the bribery conviction qualifies as a violent felony under the ACCA and assume, for purposes of deciding the motion, that it does not.

## II.    LEGAL STANDARD

Whether the underlying criminal convictions of Defendant's ACCA enhancement qualify as "violent felonies" depends on whether they satisfy the definition of "violent felony" under the remaining clauses of the ACCA, now that the residual clause has been struck down as unconstitutional.  *See* 18 U.S.C. § 924(e)(2)(B). In making its determination, the Court should consider the offense "generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. U.S.*, 553 U.S. 137, 141 (2008).   This "categorical approach" requires the Court to "consult only the fact of conviction and the statutory definition of the prior offense, and [] not generally consider the particular facts disclosed by the record of conviction." *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010) (internal quotations omitted); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

The Supreme Court explained in *Johnson v. United States*, 559 U.S. 133, 140 (2010)[5] that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person."  (Emphasis in original.) Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 1272.  Therefore, in evaluating whether

---

[5] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

Defendant's past convictions under New Mexico law constitute violent felonies under the ACCA, the Court must first consider whether each state statute that he violated necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" *violent* force against the person of another.  If so, it is categorically a "violent felony" under the force clause of the ACCA.

If, however, the statutory definition of any of Defendant's prior offenses is *broader* than the ACCA's definition of "violent felony" and the prior offense is "divisible," the Court will then apply what is known as a "modified-categorical approach."  *Ramon Silva*, 608 F.3d at 669; *see also Mathis*, 136 S. Ct. at 2249, 2256.  Under this approach, the Court should consult "charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that qualifies as a violent felony."  *Id.*  Any three such felonies may validly underlie the application of the ACCA enhancement.  18 U.S.C. § 924(e)(2)(B)(i).

III.   ANALYSIS

Defendant challenges his sentence on the basis that, after *Johnson II*, his past criminal convictions identified in the PSR as predicate offenses compelling the ACCA enhancement no longer qualify as "violent felonies" under the remaining clauses of the ACCA.  *Doc. 1* at 8-16.  He argues that he therefore does not qualify as an armed career criminal and is entitled to be resentenced without the ACCA enhancement.  *Id.* at 16. Each of Defendant's predicate criminal convictions for his armed career criminal

designation will be addressed in turn to determine whether the ACCA enhancement was properly applied in light of *Johnson II.*

As a preliminary matter, Defendant's past convictions clearly do not qualify under the clause enumerating the specific felonies of "burglary, arson, or extortion," or those "involv[ing] use of explosives."  *Id.* at (e)(2)(B)(ii); *see also* PSR ¶ 28.  Therefore, the only question before the Court is whether at least three of Defendant's past convictions qualify as violent felonies under the "force clause"—that is, whether each conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  *Id.* at (e)(2)(B)(i).

> i.  *Robbery While Armed with a Deadly Weapon*

Defendant does not dispute that he was convicted of Robbery While Armed with a Deadly Weapon pursuant to N.M.S.A. § 40A-16-2 (1953), later recodified as N.M.S.A. § 30-16-2 (1978).  *Doc. 7* at 4 n.4; *doc. 1* at 12.  That statute sets forth the elements of the crime as follows:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, *by use or threatened use of force or violence.*
>
> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M.S.A. § 30-16-2 (formerly N.M.S.A. § 40A-16-2 (1953)) (emphasis added).

New Mexico courts have made clear that the "use or threatened use of force" must be against the person of another to satisfy this element.  *See, e.g., State v. Bernal*, 146 P.3d 289, 296 (N.M. 2006); *State v. Curley*, 939 P.2d 1103, 1106 (N.M. Ct. App. 1997).  For example, the New Mexico Supreme Court has instructed that, in contrast to the statute criminalizing larceny, the robbery statute "is clearly designed to protect citizens from violence . . . .  Robbery is not merely a property crime, but a crime against a person." *Bernal*, 146 P.3d at 296.   The New Mexico Court of Appeals has similarly explained that the requirement that property be taken with sufficient force "so as to overcome the resistance of attachment" before larceny is elevated to robbery is intended to reflect "the increased danger to the person that robbery involves over the offense of larceny." *Curley*, 939 P.2d at 1106.

Defendant argues to the contrary that armed robbery "may be accomplished . . . without the use, threatened use, or attempted use of physical force against the person of another." *Doc. 1* at 10-11.  In support, he cites to various examples given in the official Committee Commentary to New Mexico's Uniform Jury Instruction on the essential elements of robbery.  *Doc. 1* at 10-11 (citing N.M. R. CR. UJI 14-1620, Committee Commentary).  However, this argument mistakenly conflates the force element of the offense of robbery in New Mexico with the "immediate control" element, which can be satisfied even when the property taken is not located on the person of the victim.  *See, e.g., Osborne v. State*, 38 S.E.2d 558, 559 (1946) (both force and "immediate control"

7

elements of robbery are established where "two men strike and beat another with their hands, strike him in the face with a blunt instrument, and then immediately take his money from the pocket of his trousers which are . . . eight or ten feet away from the victim[.]"); *People v. Day*, 63 Cal. Rptr. 677, 678 (Cal. Ct. App. 1967) (finding that a defendant "took personal property from the possession of another against the will of that person and by means of force" where he "stuck a knife toward [the victim's] ribs" and directed the victim to lie down while the defendant removed cash from the register); *State v. Cottone*, 145 A.2d 509, 513, 512 (N.J. Super. Ct. App. Div. 1958) (finding both the elements of "taking of the property of another from his person or presence" and "by violence or putting him in fear" were met where a servant was held at gunpoint, ordered to lie on the floor, bound, and gagged, while three men stole property from an area upstairs).  In each of the cases cited by Defendant and referenced by the UJI Committee, the element at issue was the "immediate control" element, and the use or threatened use of force against the person of another was met beyond dispute in each instance.  *See Doc. 1* at 10-11; N.M. R. CR. UJI 14-1620, Committee Commentary. Defendant's argument on this point is therefore without merit.

Having established that the use or threatened use of force must be against the person of another, the question still remains whether the amount of force required under the New Mexico robbery statute is categorically sufficient to meet the standard outlined in *Johnson I*—that is, "force capable of causing physical pain or injury to

another person."  559 U.S. at 140.

The state law jurisprudence regarding the statute instructs that "[t]he use of force, violence, or intimidation is an essential element of robbery."  *State v. Lewis*, 867 P.2d 1231, 1233 (N.M. Ct. App. 1993).  "The force or intimidation is the gist of the offense."  *State v. Sanchez*, 430 P.2d 781, 782 (N.M. Ct. App. 1967).  The phrase "or violence," as used in the statute, "do[es] not substantively state an alternative means of committing the offense[.]" *Curley*, 939 P.2d at 1104.  State courts in New Mexico thus use the terms "force" and "violence" interchangeably when discussing whether the force element of the statute has been met by an offense.  *See id.*

The force or fear required under the state robbery statute "must be the moving cause inducing the victim to part unwillingly with his property.  It must overcome the victim's resistance.  It must compel one to part with his property.  It must be such that the power of the owner to retain his property is overcome."  *Sanchez*, 430 P.2d at 782 (internal citations omitted).  The "use of force to retain property or to facilitate escape does not satisfy the force element necessary for the crime of robbery."  *Lewis*, 867 P.2d at 1233-34.  Rather, "the use or threatened use of force must be the factor by which the property is removed from the victim's possession."  *Id.* at 1233.  For example, the *Curley* court concluded that the defendant was entitled to an instruction on the lesser included offense of larceny even though he shoved the victim before taking her purse, because the jury could have found that the shove was accidental and independent of the taking,

9

and that the defendant thus "took the purse by surprise from a person who was not resisting, and not by force necessary to overcome any resistance."  939 P.2d at 1107.

Whether the force employed during a larceny is sufficient to elevate the offense to robbery requires an evaluation by the fact-finder.  *See State v. Clokey*, 553 P.2d 1260, 1260 ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion.").  *De minimis* force will not do to sustain a robbery conviction.  *See Curley*, 939 P.2d at 1105 ("[W]hen no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery.").  Mere "touching or jostling," or even the more overtly forceful act of pressing a fist into the victim's back while stealing his property, are all insufficient to establish the force element; such circumstances support only the lesser conviction of larceny.  *Sanchez*, 430 P.2d at 782.

In older cases, New Mexico courts have said "in dictum that even a slight amount of force, such as jostling the victim or snatching away the property is sufficient" force for a robbery conviction.  *Curley*, 939 P.2d at 1104 (citing *State v. Martinez*, 513 P.2d 402, 403 (N.M. Ct. App. 1973)).  However, the *Curley* opinion makes clear that the property must be taken with sufficient force to "overcome the resistance of attachment." *Id*. at 1105-06.  Importantly, the *Curley* court explained that the distinction between robbery and larceny does not hinge on "[s]ubtle differences in the amount of force used,

10

alone[.]"  Rather, the court explained that "if we remember that the reason for the

distinction is the increased danger to the person" accompanying the crime of robbery,

"then an increase in force that makes the victim aware that her body is resisting could

lead to the dangers that the crime of robbery was designed to alleviate[,]" such as

violent altercations or confrontations.  *Curley*, 939 P.2d at 1103.

Consequently, under New Mexico law, the essential purpose of the robbery

statute is to prevent the possibility of dangerous and violent altercations that arises

when enough force is used to create an occasion for confrontation.  As the Supreme

Court of New Mexico has explained, "robbery is a crime designed to punish the use of

violence" and "to protect citizens from violence."  *Bernal*, 146 P.3d at 296.

The analysis set forth by the *Curley* court regarding the force element of New

Mexico robbery directly parallels the rationale in *Ramon Silva*, in which the Tenth

Circuit Court of Appeals held that "apprehension causing" aggravated assault is

categorically a "violent felony" under the "threatened use of force" prong of the ACCA

force clause.  608 F.3d at 670-71.  There, the court reasoned that the conduct proscribed

by the offense "threatens the use of '*violent*' force because by committing such an act,

the aggressor communicates to his victim that he will potentially use '*violent* force'

against the victim in the near-future," and because such conduct "*always has the*

*potential*" to lead to violent force.  *Id.* (emphasis added).  Therefore, the force required in

New Mexico to establish the crime of simple robbery must at the very least satisfy the

11

"threatened use" prong of the ACCA force clause, given that state law has established that the elements of the statute require actual or potential violent force.  *See* 18 U.S.C. § 924(e)(2)(B)(i).  It thus qualifies as a violent felony under the ACCA.[6]  *See also Contreras v. United States*, Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 12* at 8-18 in 16-cv-0671 RB/SMV (D.N.M. Dec. 6, 2016) (concluding that New Mexico robbery qualifies as a predicate conviction under the force clause of the ACCA).

Though its decision predates *Johnson I*, the Tenth Circuit Court of Appeals has reached the same conclusion.  *See United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993).  In *Lujan*, the Court of Appeals confronted a defendant convicted of manslaughter in California and robbery in New Mexico, under the same statute at issue here.  *Id.* at 891.  In holding that both convictions constitute "violent felonies" under the ACCA, the court explained: "[The California manslaughter statute] has 'as an element

---

[6] This conclusion is also supported by the textual history of the ACCA and the Supreme Court's interpretation of its general scope.  "Prior to the enactment of the current language, the [ACCA] applied its enhanced sentence to offenders with 'three previous convictions for robbery or burglary.'" *Begay v. United States*, 553 U.S. 137, 143 (2008).  The Supreme Court has explained that Congress changed the language of the statute in order "to *expand* that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))." *Id.* at 143-44 (emphasis added); *see also Taylor v. United States*, 495 U.S. 575, 582 (1990) (describing a 1986 amendment to the ACCA as one that "expanded the predicate offenses triggering the sentence enhancement from 'robbery or burglary' to 'a violent felony or a serious drug offense[.]'").  Certainly, if generic robbery was originally included and the definition was subsequently expanded, generic robbery would remain within the ambit of the ACCA.  Moreover, as generic robbery is a crime against the person, it would fall within clause (i) of the ACCA – the "force" clause.  Notably, New Mexico's robbery statute is narrower than the uniform generic definition of robbery.  New Mexico still requires that a defendant "must use force before or during the taking itself" in order to commit robbery.  *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1235 (10th Cir. 2009).  This requirement is a relic of the strict common law to which only five states, including New Mexico, still adhere.  *Id.*   In contrast, generic robbery incorporates the more lenient "continuing offense theory"—an act of force or violence committed to facilitate escape suffices to satisfy the force element of robbery.  *See id.* at 1234-37.  Therefore, as generic robbery should remain within the force clause of the ACCA after its expansion, so should New Mexico's narrower version.

the use, attempted use, or threatened use of physical force against the person of another' and thus is a violent felony under the ACCA. The New Mexico robbery statute also contains the required element of force[.]" *Id.* at 892 (quoting and italicizing for emphasis the force element of N.M.S.A. § 30-16-2).

While I conclude that simple robbery under New Mexico law constitutes a violent felony under the ACCA, Defendant was convicted of the more serious offense of robbery while armed with a deadly weapon. This fact further bolsters the conclusion that his conviction constitutes a violent felony under the ACCA. The robbery statute defines the three separate crimes of first degree, second degree, and third degree felony robbery by listing elements in the alternative. *See* N.M.S.A. § 30-16-2. Unlike third degree (simple) robbery, Defendant's conviction required proof of the element of being "armed with a deadly weapon" during commission of the offense. *See id.* It is thus a divisible statute, and the Court should employ the modified categorical approach in determining whether armed robbery is a "violent felony" under the ACCA force clause. *Ramon Silva*, 608 F.3d at 669; s*ee also Mathis*, 136 S. Ct. at 2249, 2256 (explaining that "divisible" statutes are those that "list elements in the alternative, and thereby define multiple crimes," and later instructing that "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").

The New Mexico Criminal Code provides the uniform definition of "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable

of producing death or great bodily harm," followed by a list of examples of weapons that meet this definition.  N.M.S.A. § 30-1-12(B).  The same statute sets forth the uniform definition of "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body."  *Id.* § 30-1-12(A).

There can be no doubt that, if use of a deadly weapon during the robbery were required for a conviction for armed robbery, armed robbery would constitute a violent felony under the ACCA.  However, some New Mexico cases suggest that no use of the weapon is required.  *See, e.g.*, *State v. Duran*, 570 P.2d 39, 40-41 (N.M. 1977) (rejecting as "not necessarily true" the State's contention that a jury's finding of guilt on a New Mexico armed robbery charge "necessarily determined that defendant used a firearm," as required to justify a firearm enhancement); *see also State v. Chouinard*, 603 P.2d 744, 745 (N.M. 1979) (distinguishing a statute providing for a sentence enhancement where a firearm is "used" in the commission of a felony from statutes allowing punishment of mere possession and non-use, including the New Mexico armed robbery statute as a specific example, and citing *Duran* for the proposition that "'[u]se is different from 'possession.'  This court has previously noted this distinction with respect to firearms.").

However, the New Mexico Court of Appeals has made clear that whether the element of having been "armed with a deadly weapon" during the commission of a

robbery is satisfied requires more than a simple inquiry into whether defendant merely possessed such a weapon. *See State v. Hamilton*, 6 P.3d 1043 (N.M. Ct. App. 2000); *see also Lewis*, 867 P.2d at 1232-33 (Use of a weapon solely to facilitate escape does not constitute armed robbery where no force is used or threatened to obtain a victim's property prior to escape.). In *Hamilton*, the defendant broke into the victim's home, and began demanding and taking property. *Id*. at 1045. When he entered the home, he did not possess a firearm. *Id*. However, during the course of his initial thefts, he found and took a firearm:

> After finding the handgun, Defendant told Means to give him all of her money. She again told Defendant that she did not have any money, but Defendant reached in Means's purse and found a twenty dollar bill, which he took. Next, Defendant pointed the gun at Means's abdomen then moved the gun quickly to one side and fired, narrowly missing Means but putting a hole in the couch.

*Id*. The defendant argued that he could not be convicted of armed robbery because he acquired the firearm during the course of the robbery. *Id*. In its review of relevant cases, the court reasoned that "the determination of whether a defendant who seizes a weapon during the commission of a robbery is armed 'while' committing the robbery is highly fact sensitive. When the defendant acquires the weapon and *how he uses it* after its acquisition are paramount." *Id*. (emphasis added). The *Hamilton* holding could be read as focusing on the meaning of "while." Under this interpretation, the crucial question would be whether the defendant possessed the firearm at the time the robbery was occurring. However, if true, "how he uses it after its acquisition" would not be

relevant, let alone "paramount." The court would have considered only when the firearm was acquired and whether the robbery was still in progress. Instead, *Hamilton* supports the conclusion that mere possession of the firearm during the robbery without any use whatsoever is insufficient for the crime of armed robbery under New Mexico law.

Even assuming without deciding that armed robbery can be committed where a defendant never uses a deadly weapon during the commission of the offense, Defendant's conviction is categorically a violent felony under the ACCA. This is so, first of all, because simple robbery alone satisfies the requirements of the force clause, as discussed above. Secondly, in light of the relevant state law, Defendant was necessarily convicted of (1) using or threatening the use of force against the person of another, (2) such that the victim's resistance to parting with his property was overcome, (3) while armed with a weapon capable of producing death or great bodily harm. *See* N.M.S.A. § 30-16-2; *Bernal*, 146 P.3d at 296; *Sanchez*, 430 P.2d at 782; N.M.S.A. § 30-1-12(B). Particularly given the possession of a deadly weapon, there is categorically no way for Defendant to have engaged in such conduct without at the very least "communicat[ing] to his victim that he will potentially use '*violent* force against the victim in the near [] future." *See Ramon Silva*, 608 F.3d. at 670 (quoting *Johnson I*, 559 U.S. at 140). Such an act thus always threatens the use of "force capable of causing physical pain or injury to another person" and therefore meets the *Johnson I* standard.

### ii. *Armed Robbery with a Firearm Enhancement*

Defendant's 1979 conviction for Armed Robbery with a Firearm Enhancement

stemmed from another violation of the same statute discussed above. The statute was

recodified in 1978, but the text of the statute was not altered. *See* N.M.S.A. § 30-16-2

(1978). Therefore, this offense is also a "violent felony" under the ACCA for the same

reasons explained above regarding Defendant's Robbery While Armed with a Deadly

Weapon conviction.

### iii. *Aggravated Battery, Deadly Weapon*

The third predicate offense underlying the application of the ACCA

enhancement to Defendant's conviction for felon in possession of a firearm is

Aggravated Battery, Deadly Weapon, in violation of N.M.S.A. § 30-3-5. That statute

provides:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M.S.A. § 30-3-5. Defendant argues that his conviction of aggravated battery with a

deadly weapon does not constitute a violent felony because "unlawful touching could

17

suffice to constitute an offense under this statute, but will not suffice to qualify as a 'violent felony' under the ACCA."  *Doc. 1* at 13.  This argument is without merit.

As an initial matter, Defendant ignores an important element which is present even in the misdemeanor version of aggravated assault – the intent to injure.  One certainly could conclude that the application of force to the person of another with the intent to injure the person qualifies under *Johnson I* as the threatened use of "force capable of causing physical pain or injury to another person."  559 U.S. at 140; *see State v. Vallejos*, 9 P.3d 668, 674 (N.M. Ct. App. 2000) ("The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury.").  However, because Defendant was convicted of a more serious felony version of aggravated battery, the Court need not decide that question.

Defendant was convicted of Aggravated Battery, Deadly Weapon, in violation of N.M.S.A. § 30-3-5(C).  As explained by the government and undisputed by Defendant, the felony versions of the crime are divisible from the misdemeanor version.  *See doc. 7* at 7-9 (applying *Mathis* test of divisibility).  In short, a conviction under N.M.S.A. § 30-3-5(C) enhances the maximum punishment and requires proof of one of the following: (i) that the battery caused great bodily harm; (ii) that the battery was accomplished by the use of a deadly weapon; or (iii) that the battery was accomplished in a manner whereby great bodily harm could be inflicted.  Certainly, if the battery caused great bodily harm or was done in a manner whereby great bodily harm could be inflicted, the battery

involved "force capable of causing physical pain or injury to another person" as required by *Johnson I.*  559 U.S. at 140.  With respect to a battery in which a deadly weapon was used, the answer is dictated by the Tenth Circuit's recent decision in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016).

In *Maldonado-Palma*, the court considered whether a New Mexico conviction for aggravated assault with a deadly weapon categorically constituted a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[7]  *Id*. at 1246-50.  The sentencing guidelines definition of "crime of violence" is identical to the relevant ACCA provision and is also interpreted pursuant to the modified categorical approach outlined herein.  *See United States v. Ventura-Perez*, 666 F.3d 670, 673 (10th Cir. 2012).  In *Maldonado-Palma*, the court first confirmed that, under New Mexico law, aggravated assault with a deadly weapon requires *use* of the deadly weapon—mere possession does not suffice to satisfy the elements.  839 F.3d at 1249-50.  After reviewing the New Mexico definition of "deadly weapon," the court concluded that employing such a weapon "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'"  *Id*. at 1250 (quoting *Johnson I*, 559 U.S. at 140); *see also Ramon Silva*, 608 F.3d. at 669-71.

As with aggravated assault with a deadly weapon, aggravated battery with a

---

[7] The guideline amendments made effective November 1, 2016 eliminated the relevant text of this portion of the guidelines, which previously instructed the sentencing court to increase a defendant's base offense level if "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence[.]"  The revision does not affect the present analysis.

deadly weapon requires proof of use of the deadly weapon under New Mexico law.  *See* N.M.S.A. § 30-3-5(C); *see also* N.M. R. CR. 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the defendant "touched or applied force to" the victim with a deadly weapon and that "[t]he defendant *used*" a deadly weapon (emphasis added)).  Consequently, the logic in *Maldonado-Palma* compels the conclusion that a New Mexico conviction for aggravated battery with a deadly weapon categorically qualifies as a violent felony under the ACCA.[8]  This conclusion is further supported by the fact that the Supreme Court in the *Johnson I* opinion itself cited with approval Black's definition of "violent felony" as "a crime characterized by extreme physical force, such as . . . *assault and battery with a dangerous weapon*" while parsing the meaning of the ACCA's force clause.  559 U.S. at 140-41 (emphasis added).

In conclusion, all three of the means by which one can violate N.M.S.A. § 30-3-5(C) satisfy the force requirement set out in *Johnson I*.  As such, Defendant's conviction under that statute constitutes a "violent felony" under the ACCA.

       iv.     *Aggravated Assault Against Household Member with a Deadly Weapon*

Defendant does not address whether or not his New Mexico conviction in 2002 for aggravated assault against a household member with a deadly weapon qualifies as a predicate violent felony under the ACCA.  *See generally doc. 1.*  It appears that this conviction was pursuant to N.M.S.A. § 30-3-2(A), which was the precise crime at issue

---

[8] In fact, given that *Maldonado-Palma* involved only an assault, and Defendant's conviction involved a completed battery, the logic applies in even greater force here.

in *Maldonado-Palma*.  *See* PSR ¶ 39; 839 F.3d at 1247.  As such, it also constitutes a

predicate ACCA felony.  Should the Court determine that one, and only one, of the

felonies discussed previously not qualify as an ACCA predicate felony, I would still

recommend denial of resentencing on the basis of this 2002 conviction.

    IV.   CONCLUSION

Defendant's challenge to his sentence under *Johnson II* should be denied.  Even

post-*Johnson II*, his criminal history includes at least three violent felony convictions

which trigger the application of the ACCA's fifteen-year mandatory minimum and the

sentencing guideline enhancement under U.S.S.G. § 4B1.4(b).

Accordingly, I recommend that the Court DENY Defendant's Motion to Vacate,

Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and dismiss this case with

prejudice.

 

                                                    _____
                                      GREGORY B. WORMUTH
                               United States Magistrate Judge

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**